**2015-1237**

# United States Court of Appeals
# for the Federal Circuit

EON CORP. IP HOLDINGS LLC,

*Plaintiff – Appellee,*

*v.*

SILVER SPRING NETWORKS, INC.,

*Defendant – Appellant.*

*Appeals from the United States District Court for the Eastern District of Texas in Case No. 6:11-CV-00317-JDL, Judge John D. Love*

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## SILVER SPRING NETWORKS, INC.

MARK A. LEMLEY
ELIZABETH OFFEN-BROWN KLEIN
ALEXANDRA MOSS
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666
mlemley@durietangri.com
eklein@durietangri.com
amoss@durietangri.com

ALAN HODES
SILVER SPRING NETWORKS, INC.
555 Broadway Street
Redwood City, CA 94063
(650) 839-4786
ahodes@silverspringnet.com

*Counsel for Defendant-Appellant, Silver Spring Networks, Inc.*

*Counsel Continued on the Inside Cover*

July 2, 2015



*Counsel Continued*

ROBERT KRAMER
BONNIE LAU
C. GIDEON KORRELL
DENTONS US LLP
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304
(650) 798-0300
robert.kramer@dentons.com
bonnie.lau@dentons.com
gideon.korrell@dentons.com

*Counsel for Defendant-Appellant, Silver Spring Networks, Inc.*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................ 1

ARGUMENT ................................................................................................... 3

I.    ELECTRIC POWER METERS THAT CAN OPERATE ONLY WHEN SECURELY ATTACHED TO A BUILDING ARE "FIXED" AND "STATIONARY" RATHER THAN "MOBILE" AND "PORTABLE" ................................................................ 3

    A.    The District Court Erred In Refusing To Construe Disputed Claim Language Susceptible Of Multiple Plain Meanings ...................................... 3

    B.    Trial Testimony on Infringement Implicated the Parties' Unresolved Claim Construction Dispute ............... 6

    C.    The District Court's Refusal to Construe "Mobile" And "Portable" Was Not Harmless Error ..................................................................... 8

II.    THE CLAIMS REQUIRE THAT DATA MESSAGES BE BOTH TRANSMITTED AND RECEIVED ........................ 11

    A.    An Infringement Verdict Cannot Be Sustained Based on the Jury's Determination of Claim Scope ................................................................. 11

    B.    There Is No Basis for Construing the Same Claim Term Differently In the '546 Patent than In the '491 Patent ........................................................ 13

    C.    EON Previously Argued Successfully That a "Base Station" Was a Structure for Transmitting and Receiving Data Messages ........................................... 16

    D.    The District Court Erred in Sustaining the Jury's Implicit Claim Construction Based on Unrelated Testimony ......................................................... 17

III.   THE DAMAGES AWARD CANNOT STAND WITHOUT A NEW TRIAL.........................................................18

IV.   EON'S NUMEROUS WAIVER ARGUMENTS ARE MERITLESS................................................................22

    A.   Silver Spring Does Not Raise a New Construction of "Mobile" and "Portable"..................................22

    B.   Silver Spring Was Not Required to Make Futile Objections Throughout Trial to Preserve Its Original Claim Construction Position..............................23

    C.   Silver Spring Is Not Challenging the District Court's Evidentiary Rulings...............................25

    D.   Silver Spring Did Not Invite Error....................................25

    E.   Silver Spring's Objection is Not to Attorney Argument........................................................................26

    F.   Silver Spring Did Not Waive Its Arguments With Respect to the '491 Patent..................................26

    G.   Silver Spring Does Not Ask This Panel to Find Claim Preambles Limiting, but Merely Preserves the Issue for En Banc Review...........................................28

    H.   Silver Spring Did Not Waive Its New Trial Challenge.........................................................................29

CONCLUSION.................................................................................30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Accentra, Inc. v. Staples, Inc.*,
  500 F. App'x 922 (Fed. Cir. 2013).......................................................20

*Fed. Energy Admin. v. Algonquin SNG, Inc.*,
  426 U.S. 548 (1976) ..........................................................................12

*Function Media, L.L.C. v. Google, Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013) ............................................... 3, 18, 19

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
  340 F.3d 1314 (Fed. Cir. 2003) ........................................................27

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ...........................................................19

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) .........................................................10

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
  No. 2014-1373, 2015 WL 3613644 (Fed. Cir. June 10, 2015) ............5

*Lighting Ballast Control LLC v. Universal Lighting Techs., Inc.*,
  No. 2012-1014, Dkt. No. 310 (Fed. Cir. June 23, 2015)....................24

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ..........................................................................13

*Memphis Cmty. Sch. Dist. v. Stachura*,
  477 U.S. 299 (1986) ..........................................................................19

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..........................................................................17

*NTP, Inc. v. Research In Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) .........................................................20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ..........................................................................3, 4

*Omega Eng'g, Inc, v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ..........................................................................14

*Red Lake Band v. United States*,
  229 Ct. Cl. 816 (1982) ..........................................................................12

*Rizzo v. Children's World Learning Ctrs., Inc.*,
  213 F.3d 209 (5th Cir. 2000) ..........................................................................24

*SanDisk Corp. v. Kingston Tech. Co.*,
  695 F.3d 1348 (Fed. Cir. 2012) ..........................................................................24

*Solvay S.A. v. Honeywell Int'l Inc.*,
  742 F.3d 998 (Fed. Cir. 2014) ..................................................................... 10, 23

*Trans World Airlines, Inc. v. Thurston*,
  469 U.S. 111 (1985) ..........................................................................12

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
  69 F.3d 512 (Fed. Cir. 1995) ..................................................................... 18-19

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ..........................................................................19

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ..........................................................................19

# SUMMARY OF ARGUMENT

EON spends a large portion of its brief avoiding the merits of this case. It argues that the district court and this Court should defer to the jury in determining the meaning of the words "mobile" and "portable," dodging the central claim construction issue in this case, and that Silver Spring somehow waived its right to a proper claim construction by not objecting to attorney argument about claim construction at trial. It argues that Silver Spring waived its right to point out the absence of a central element of the patent claim, although EON never sought construction of that term and the dispute over that term did not arise until after trial. Nor is that all; all told, EON makes *eight* different baseless waiver arguments.

EON avoids the merits because it has no credible response on the merits to either of the central questions of claim construction in this case. EON cannot seriously dispute that it persuaded the district judge that the terms "mobile" and "portable" should be given their plain and ordinary meaning, and then persuaded the jury to give them a very different meaning.

Nor can it seriously dispute that the '491 patent requires both "transmitting" and "receiving" digital data messages, something EON's own expert made clear that Silver Spring's products do not do. Indeed, the district court specifically found in granting JMOL on the virtually identical '546 patent language that "EON

has failed to present sufficient evidence establishing that the SSN network transmits data messages in a downstream direction." A12. EON chose not to challenge that conclusion on appeal, and it is now the law of the case and not subject to modification by this Court.

Finally, EON points to no evidence that the jury actually determined that the '546 patent had no value. There is none. Because the jury's damages verdict was general, we cannot know what the jury would have done had it correctly concluded that the '546 patent was not infringed. That is why this Court's precedents uniformly require retrial of damages in such a case.

We address the merits first in Parts I–III. EON's plethora of waiver arguments are discussed in Part IV.

## ARGUMENT

I. **ELECTRIC POWER METERS THAT CAN OPERATE ONLY WHEN SECURELY ATTACHED TO A BUILDING ARE "FIXED" AND "STATIONARY" RATHER THAN "MOBILE" AND "PORTABLE"**

### A.     The District Court Erred In Refusing To Construe Disputed Claim Language Susceptible Of Multiple Plain Meanings

When the parties dispute claim scope, the court, not the jury, must decide what the terms of the claim mean. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). This case presents the opposite situation from *Function Media, L.L.C. v. Google, Inc.*, where the "court accepted [the appellant's] proposed claim construction" and "the district court never refused to construe any disputed terms." 708 F.3d 1310, 1327 (Fed. Cir. 2013). Here, the court rejected Silver Spring's proposed construction of "mobile" and "portable" by refusing to resolve the parties' dispute or provide an explicit definition of the terms to prevent ambiguity. Instead, it let the jury decide between competing notions of the terms' so-called plain and ordinary meaning. The fact that the parties disputed the meaning of the terms at trial, and that EON explicitly asked the jury to define the terms, demonstrates that the jury was improperly given the question of claim construction.

*Verizon Services Corp. v. Cox Fibernet Virginia, Inc.* similarly confirms that *O2 Micro* controls this case. In *Verizon*, the appellant argued that *O2 Micro* applied because the jury resolved a claim construction dispute sparked by a

statement made by opposing counsel in closing argument. *See* 602 F.3d 1325, 1334 (Fed. Cir. 2010) ("Verizon characterizes Cox's closing argument as creating 'an actual dispute regarding whether the patent claims were limited to communications over the Internet and/or the particular problems the inventors were trying to solve' . . . ."). This Court said no, because "[u]nlike *O2 Micro*, where the scope of a specific claim term was in dispute beginning at the *Markman* hearing and continuing throughout the trial, [the appellant] never identified at any time during the proceedings before the district court any specific claim term that was misconstrued." *Id.* Moreover, the testimony at issue in *Verizon* "did not invite the jury to choose between alternative meanings of technical terms or words of art or to decide the meaning of a particular claim term, as was the case in *O2 Micro*." *Id.* Here, the claim construction dispute regarding "mobile" and "portable" arose during *Markman* proceedings, and the court allowed counsel to invite the jury to choose between alternative meanings of the terms.

The district court erred by not resolving the parties' dispute over what the terms "mobile" and "portable" require, instead handing the question to the jury and then refusing to grant JMOL because witness testimony supposedly "provided a sufficient evidentiary basis" for the jury's claim construction.

Although the court did not explicitly construe "mobile" and "portable" "because their meanings are clear in the context of the claims and will be readily

understandable to the jury," A308, it did not identify a particular plain and ordinary meaning. To the contrary, the district court relied on two *different* definitions, confirming that more than one plain and ordinary meaning exists. The court explained that "mobile" and "portable" can mean "'*capable* of being carried or moved about'" or "'*capable of being easily and conveniently* transported.'" A307 (dictionary citations omitted; emphasis added). Those two definitions are not the same. The court also recognized that those terms had to be distinguished from "fixed" and "stationary," *id.*, but deemed it unnecessary to articulate that distinction so that the jury could properly decide infringement.

Invoking "plain and ordinary meaning," without more, did not resolve the parties' dispute about claim scope. Critically, the court's construction did not tell the jury whether any object that is capable of being moved between locations qualifies as "mobile" and "portable," or whether it would have to be capable of being moved easily and not designed to operate in a fixed location.

As this Court has recognized, adjectives "may have more than one plain and ordinary meaning," and when they do, the proper course is to ascertain the meaning the patent ascribes to the term. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, No. 2014-1373, 2015 WL 3613644, at *4 (Fed. Cir. June 10, 2015) ("An adjective such as 'sealed' may have more than one plain and ordinary meaning," in which case, "the appropriate definition can be ascertained from the specification.").

As this Court held in *O2 Micro*, refusing to construe disputed claim language and letting the jury choose between alternative meanings is legal error.  521 F.3d at 1362.

> **B.    Trial Testimony on Infringement Implicated the Parties' Unresolved Claim Construction Dispute**

The unresolved dispute led the parties to present different testimony on the question of whether the accused meters qualified as "mobile" and "portable" based on different possible interpretations of those terms.  EON's claim that Silver Spring's expert admitted that the devices here were portable, Opposition Br. at 22, relies on its inaccurate and misleading quotation of the trial record.  That expert testified on direct that "mobile" or "portable" meant "easily moved from one location to another," A791 at 81:12–14, and that Silver Spring's meter "was certainly not a portable or a mobile subscriber unit." *Id.* at 81:19–82:1.  On cross, he maintained that "mobile" meant "easily moved," A590 at 75:1–24, before acknowledging the different possible meanings of mobile and portable: "those meters, whether you can call it portable or whether you call it a portable device in the context of the claim, I think you get very -- two different answers." A593 at 88:12–15.  EON's counsel attempted to clarify: "I'm asking you to apply the Court's understanding as expressed through . . . his orders. Do you have an understanding that portable and mobile mean something different with respect to these claims?" *Id.* at 88:16–19.  Silver Spring's expert answered affirmatively: "I

think with respect to the claims they do mean something different. It's – it's talking about a portable or mobile subscriber unit as it's described in the patent and as we've talked about.  I think turning around and pointing to a meter and trying to draw that characterization would be wrong." *Id.* at 88:20–25. In fact, Silver Spring's expert only stated that the meters qualified as portable "in the ***very*** broadest sense," *id.* at 88:5 (emphasis added), before explaining that characterizing the meters as mobile or portable, as required by the patent, "would be wrong." *Id*. at 88:25.

EON itself presented conflicting witness testimony on whether and why the accused meters could qualify as "mobile" and "portable."  The inventor was asked if "automatic meters that are bolted to a house or a business with a locking bolt and hooked up to 240 watts of electricity" would qualify as mobile or portable.  A394 at 122:20–23.  He responded:  "If you wanted to replace that unit, I would say that you bring one in and you would take the old one off and bolt the new one on. And in that sense, it is portable. You don't necessarily have to build a new house to put the meter on. It is certainly portable. You can move it from place to place." *Id.* at 122:25–123:6.

That was not the definition EON's expert gave when asked, "[c]ould you describe what mobility means with respect to these patents?"  A426 at 90:2–3.  His answer had nothing to do with the movement of the devices themselves, but rather

7

their ability to communicate with different sources: "So what I'm attempting to show here is that in the Dinkins patents, it allows for there to be more than one receiver within the scope of the base station's communication area, which are called geographic areas. And it even allows for multiple base stations to be present in the wireless system. And so for that reason, a single subscriber unit has many, many paths to get to the base station. It could route through multiple receivers, paths, or even to other base station paths, and in the '491 through different modems as well." *Id.* at 90:4–14. EON thus provided two different infringement theories that implicated different meanings of terms the district court had already refused to construe for the jury. Under that circumstance, it is the obligation of the Court, not the jury, to decide what the claims mean.

## C. The District Court's Refusal to Construe "Mobile" And "Portable" Was Not Harmless Error

The district court permitted the jury to find infringement by electric power meters that can operate only when securely attached to a building — meters that are fixed and stationary in both design and practice. No jury properly instructed on the meaning of the terms "mobile" and "portable" could have found infringement by meters that must be attached to a structure, like a house, to operate, are locked

or bolted in place to ensure they are not physically moved, and cannot be easily or conveniently moved because of their connection to a hazardous voltage supply.[1]

EON mischaracterizes testimony in arguing that Silver Spring's witnesses conceded that the accused meters are nevertheless mobile. *See* Opposition Br. at 30. No witness made such a concession. The relevant colloquy, quoted in full below, confirms that there is no dispute that the accused meters are securely and enduringly attached to houses:

> Q. [T]hose meters when they're installed aren't actually bolted to the house, are they? Instead, there's a retaining ring that slips -- after you put the meter in the socket, it's plugged in like you would plug into your vacuum cleaner into a socket. There's prongs that go in, and it starts working. They put a retaining ring in there, don't they, and they put a special lock so people don't steal it? So they lock it to the house. It doesn't require it to be bolted for it to work, right? Isn't that your understanding?
>
> A. I think that's a pretty accurate characterization of what you just said, ***and I think it's a pretty good indication it's not mobile***.

A590 at 76:11–76:25 (emphasis added). EON deliberately omits the emphasized text from the testimony. There is simply no way to read the complete response as a concession that the accused meters are mobile when it says exactly the opposite.

---

[1]  EON attempts to reframe the question as whether the *communications module* within the meter, not the meter as a whole, is "mobile" and "portable." Opposition Br. at 10–11. But that was ***not*** the issue at trial. At trial, EON accused the entire electric meter. A428 at 98:14–17; *see also* A455 at 74:4–9.

Though it is undisputed that the accused meters are secured in place and attached to houses, EON attempts to defend the jury verdict under a new claim construction, implying that "mobile" and "portable" do not require physical movability, just a meter that can connect to multiple access points. *See* Opposition Br. at 33.  EON never asked the court to construe the terms to require only network connectivity.  EON therefore waived that argument.  *Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1004 (Fed. Cir. 2014).  It is also improper because EON successfully convinced the court that no explicit construction of "portable" or "mobile" was necessary.  *Cf. Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) ("[A] party will be judicially estopped from asserting a position on appeal that is inconsistent with a position it advocated at trial and persuaded the trial court to adopt.").  Moreover, EON's new construction flatly contradicts the meaning of "mobile" and "portable" in the '101 patent claims and specification, which distinguish those terms from "fixed" or "stationary" and describe mobile units that can be "moved throughout the cell territory."  A173 at 6:4; Opening Br. at 23.

Finally, EON falls back on the fallacious argument that the patent specification's reference to truly portable devices as data entry points for ***meter readers*** (utility employees who walk up to meters bolted to houses and record usage data) suggests that the meters themselves must be portable.  Opposition Br.

10

at 19.  EON's conflation of electric meters and the devices used by people who walk around reading them is actually strong evidence that the accused meters are not "mobile" and "portable."  The patents envision people bringing portable devices along to read the meters because the meters themselves do not move.  The accused meters are fixed and stationary, not "mobile" and "portable."

## II.    THE CLAIMS REQUIRE THAT DATA MESSAGES BE BOTH TRANSMITTED AND RECEIVED

### A.    An Infringement Verdict Cannot Be Sustained Based on the Jury's Determination of Claim Scope

Silver Spring sought JMOL of non-infringement on the ground that no reasonable juror could find claim 3 of the '546 patent or claims 1 and 2 of the '491 patent infringed.  *See* A844–48.  The district court correctly concluded that claim 3 of the '546 patent required that digital data messages be transmitted both upstream and downstream.  As the court explained, EON did not prove that Silver Spring transmits data messages downstream, but instead, "explicitly negate[d] the possibility that the SSN network transmits data messages in a downstream direction to the meters."  A12.  The court agreed with Silver Spring about the '546 patent, holding claim 3 not infringed as a matter of law.  A13.

That determination should have led the court to grant JMOL of non-infringement for claims 1 and 2 of the '491 patent as well.  Those claims require the same element as claim 3 of the '546 patent: a base station that transmits digital

data messages to subscriber units.  *See* Opening Br. at 33–34.  EON therefore had

to show that Silver Spring met that limitation to prove infringement for claims 1

and 2 of the '491 patent.  But the court held that the jury was entitled to construe

the claims itself so that they did not require evidence of what EON failed to prove.

The court held that Silver Spring's network did not transmit data downstream to

subscriber units,  A14,  and only sustained the verdicts for claims 1 and 2 of the

'491 patent under the jury's supposedly implicit new claim construction.  *Id.*

On appeal, EON does not defend those verdicts by pointing to any record

evidence showing that a Silver Spring base station transmits digital data messages

to subscriber units.  It cannot make any such argument since it has failed to cross-

appeal the district court's judgment establishing as a matter of law that Silver

Spring does not transmit downstream data messages. That factual finding is the law

of the case.  *Red Lake Band v. United States*, 229 Ct. Cl. 816, 820–21 (1982)

("There is no question that law of the case effect can be given to the unappealed

portions of the Commission's original decisions . . . and to the Commission's

unappealed final judgment.").   EON cannot now present arguments that would

modify that judgment.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111,

119 n.14 (1985) ("An argument that would modify the judgment, however, cannot

be presented unless a cross-petition has been filed."); *Fed. Energy Admin. v.

Algonquin SNG, Inc.*, 426 U.S. 548, 560 (1976).  Therefore, the jury's verdict for

claims 1 and 2 of the '491 patent cannot be sustained when the claims are properly read, like those of '546 patent, to require downstream data transmission.

## B.    There Is No Basis for Construing the Same Claim Term Differently In the '546 Patent than In the '491 Patent

EON now defends the jury verdict by arguing that the '491 patent does not require downstream data transmission at all.[2]  That position is flawed in numerous respects.  EON does not even contend that the district court construed the relevant language of the '491 patent to mean what the jury supposedly found it did. Instead, it contends that the *jury's* construction was not factually erroneous. Opposition Br. at 39–41.  But the Supreme Court has held that interpreting the meaning of claim language "is an issue for the judge, not the jury."  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).

Nor does EON's claim interpretation follow from the plain language of the claims.  EON's argument that claims 1 and 2 of the '491 patent do not require a base station to transmit data messages to a subscriber unit is irreconcilable with the words of the claims.  *See* Opposition Br. at 40 & n.18.  Claims 1 and 2 of the '491 patent recite a "local base station repeater cell . . . comprising: base station data

---

[2]  EON's claim that Silver Spring waived the claim construction issue is nonsensical.  It is EON, not Silver Spring, whose argument depends on a new-found construction of the claims.  *See* Section IV, *infra*.

processing and communication unit for ***transmitting to a set of said subscriber units*** . . . . digital data messages."

EON also cannot support its position by pointing to differences among the claims. Claim 1 of the '546 patent, from which claim 3 depends, recites essentially identical language between "transmitting" and "receiving" as the claims at issue.[3] EON never argued that claim 1 of the '491 patent and claim 3 of the '546 patent differed in scope because of that language. Both claims were construed to require "structure adequate to perform the transmission and receiving function." A234; *see also* A231. Nor is there any indication the jury implicitly construed claim 1 of the '546 patent to require only upstream transmission. To the contrary, the jury found claim 1 not infringed.

As a rule, courts "presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003). The '491 and '546 patents both derive priority from the same application.[4]

---

[3]     *See* Opening Br. at 33–34 (side-by-side comparison of portions of both claims). The only differences — the placement of "local" when referring to the "subscriber units" and the addition of "means" when referring to the "base station repeater cell" — have no effect on claim scope, let alone any that could be relevant to the base station's transmission of data.

[4]     EON's damages expert testified that "these are interrelated" patents not distinguished for licensing purposes. A508 at 96:5–10.

Consequently, the term "base station" should be construed consistently. EON offers nothing to compel deviating from that presumption here.

The '491 patent itself defines the base station as a structure that transmits data to subscriber units: "The local base station repeater cell transmits data directly to the individual subscriber units." A0211 at 1:34–36. The patent provides no definition of "base station" that differs from that provided by the '101 patent, which the '491 patent incorporates by reference. As that definition confirms, "[t]he base station comprises a central transmitter and data processing site for processing transmitted digital data to subscriber units within the base station designated area." A0172 at 3:62–65.

At trial, EON repeatedly argued that the related patents referred to the same structural components, including the base station. EON's expert testified that "in the claims the base station has several names, such as cell site or base station repeater cell. But all of these names refer to the same thing, the base station, which is Box B." A424 at 82:5–9, 83:5–11. EON's own representations refute its attempt to now distinguish the base station of the '546 patent from that of the '491 patent.

EON's interpretation also ignores basic rules of grammar. The relevant language of claim 1 requires a base station "***for transmitting to*** a set of said local subscriber units contained within said local base station geographic area associated

with said local base station repeater cell means ***and receiving from*** a subset of said local set of subscriber units ***multiplexed synchronously related digital data messages***." A195–96 at 10:65–11:3. (emphasis added).   There is no comma between "transmitting to" and "receiving from," and the only object of the phrase "transmitting to" is "multiplexed synchronously related digital data messages." EON's new reading of the claim requires that something be "transmitted to" local subscriber units, but does not specify what might be transmitted, except that (implicitly) it cannot be digital data messages. That makes no sense.

### C.    EON Previously Argued Successfully That a "Base Station" Was a Structure for Transmitting and Receiving Data Messages

EON's new argument also contradicts its prior argument about the meaning of "base station" in related *Markman* proceedings, on which it relied here.[5]   There, EON persuaded the court that the "base station processing and transmission means" recited in claims 1 and 2 of the '546 patent "transmits to local subscriber units and receives from a subset of local subscriber units 'multiplexed synchronously related digital data messages.'" A1587.   The court held that "base station" by itself "connote[d] structure adequate to 'transmit[] . . . and receiv[e] . . . digital data messages.'" A231.   During trial, the inventor confirmed that a base

---

[5]    EON's *Markman* brief in this case stated, "EON does not identify any terms for construction and instead relies on this Court's previous constructions of identical terms."  A1112.

16

station must transmit messages to subscriber units, stating "the base station certainly transmits out toward the subscriber units."  A392 at 113:23–24.

Because EON's position in this appeal is inconsistent with its prior prevailing positions, judicial estoppel bars EON from now arguing that the base station of the '491 patent need not transmit digital data messages even though claim 1 expressly requires that exact function.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel . . . generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." ).

### D.    The District Court Erred in Sustaining the Jury's Implicit Claim Construction Based on Unrelated Testimony

The court incorrectly sustained the jury's implicit construction based on testimony regarding claims that are not at issue in this appeal.  While the court stated that EON's expert "testified that claims 1 and 2 of the '491 patent do not require the transmission of data messages from the base station to the subscriber units," A14, the testimony quoted by the court was, in fact, directed to claim 5 of that patent, as shown below:

> Q. So in your view, if a system like Silver -- if a system has a base station that sends a digital data message to a subscriber unit, as shown in this figure, that would not be something that comes within the claims of Mr. Dinkins' '491 patent, Claim 5, correct?
>
> A. Correct. Digital data messages, such as meter readings, do not flow towards the subscriber unit.

A452 at 61:18–24; *see also* A451 at 57:5–10 (identifying slide 88 as showing claim 5 of the '491 patent).

Claim 5 does not include the relevant claim language requiring a base station "for transmitting to . . . and receiving from . . . subscriber units multiplexed synchronously related digital data messages" in claims 1 and 2. Even if a jury could implicitly construe claim language based on trial testimony (which *Markman* says it cannot), it could not do so based on testimony about a completely different claim.

## III. THE DAMAGES AWARD CANNOT STAND WITHOUT A NEW TRIAL

Even if this Court affirms on the '101 and '491 patents, the jury's damages award cannot stand. When part of the basis for liability is reversed, as it was here on an infringement finding of one of the three patents, a general patent damages jury verdict must be revisited.

EON incorrectly focuses on the standard of review for challenging motions for a new trial generally as set forth in *Function Media*. Opposition Br. at 43–44. Here, Silver Spring challenges the jury's damages award ***after*** a post-verdict change to the jury's decision on liability. Thus, the so-called "wide discretion" held by the district court in determining whether to grant a new trial on damages does not apply. *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed.

Cir. 1995) (granting new trial on damages because the royalty determination was not supported by relevant evidence); *Function Media*, 708 F.3d at 1331 (affirming jury's liability finding); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 864 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011) (same).[6]

Instead, the relevant issue is the district court's failure to apply this Court's rule that a post-verdict change in infringement requires reconsideration of a general-verdict damages award. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007). The rule is decidedly not, as EON asserts, whether EON can point to some evidence in the trial record that might support a damages verdict as large as the original one despite the removal of a patent from the case. Instead, the court asks whether "*the jury's verdict* gives [an] indication what portion of such damages were allocated to the infringement" of the non-infringed patent. *Id.* (emphasis added); *accord Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986) (when "*the verdict does not reveal* the means by which the jury calculated damages, '[the] error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict.'" (emphasis added)). A special verdict form that awarded damages per patent would

---

[6] The other case relied on by EON for this proposition, *Whitserve, LLC v. Computer Packages, Inc.*, only reversed the jury's finding of liability with respect to certain claims, not an entire patent. 694 F.3d 10 (Fed. Cir. 2012).

make it clear whether the jury thought the '546 patent had any independent value. A general verdict form does not.

EON cannot show why this Court should depart from its "normal rule." EON tries to distinguish some of this Court's cases because they vacated and remanded the damages case "for further proceedings" in the district court instead of explicitly requiring a new trial. Opposition Br. at 48–49 (citing *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922 (Fed. Cir. 2013); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1300 (Fed. Cir. 2005)). However, EON cites no case deviating from the normal rule where liability on an entire patent changed after a general jury verdict and a new trial was properly requested on appeal. *Every* such case has required a remand. Instead, its argument is that (1) remand for "further proceedings" might include proceedings other than a new trial, and (2) the district court already rejected Silver Spring's motion for a new trial, so remand would be futile. But that cannot be the rule. Were it so, an appeal from a denial of a new trial could never succeed, because the district court, by definition, would have already rejected the new trial motion.

EON offers no response on the merits to Silver Spring's point that every valid patent, including the '546 patent, is presumed to have value. It ignores record evidence about differences among the patents, including EON's statement to the jury that each claim constituted a separate invention and EON's damages

expert's testimony that differences in the expiration dates of the patents would affect his damages calculation. A508 at 96:4–11; A368 at 17:5–12. EON also ignores this Court's case law establishing that no patent is valueless.

EON claims that "the record contains substantial evidence supporting the damages verdict." Opposition Br. at 44. But this "substantial evidence" is nothing more than the testimony of its own expert at trial. EON's expert's opinion does not affect whether the exact same damages award should stand after one patent is eliminated. EON may, on retrial, offer such testimony as evidence to support a jury verdict of the same size. But it is not evidence that shows that the *jury* believed the '546 patent has no value. And proving the jury believed that is the only way to avoid a retrial under this Court's precedent.

The fact that both parties' experts testified to a lump-sum damages number does not mean that they agreed the number of patents infringed was irrelevant or that the jury found as much. To the contrary, both experts based their opinions and testimony on the assumption that all three patents were valid and infringed. A476 at 158:2–7; A596 at 100:13–21. Neither party's expert opined regarding the damages amounts for infringement of only one or two of the three patents. Thus, the jury had no evidence, from the experts or otherwise, from which to calculate damages for infringement of less than all three patents.

The jury never opined regarding how to calculate damages if only one or two of the three patents was found infringed. The jury only issued a single lump sum number corresponding to its finding of infringement on all three patents. A70. Because the jury never opined as to a damages figure in the event of partial infringement, there is no jury verdict allocating damages to be evaluated. Nor was Silver Spring required to object to the use of a general verdict form. Silver Spring, like EON, was willing to accept a general verdict form. But one consequence to both parties of making that choice is that if the jury's verdict is overturned in part, damages must be retried.

## IV.   EON'S NUMEROUS WAIVER ARGUMENTS ARE MERITLESS

EON makes multiple baseless claims of waiver throughout its brief.

### A.   Silver Spring Does Not Raise a New Construction of "Mobile" and "Portable"

EON incorrectly claims that Silver Spring makes a new argument — that the devices must be "operable while in motion" — and contends that Silver Spring has waived its right to challenge the district court's claim construction by arguing on appeal that "mobile" and "portable" subscriber units must be operable while being moved. Opposition Br. at 20–21, 31.

But Silver Spring makes no such argument. It has not argued in this appeal that "mobile" or "portable" require operability while being moved — only that the terms must require more than "capable of being moved" to be distinguishable from

"fixed" and "stationary."  *See* Opening Br. at 29–30 ("Rather than 'can the meter ever be moved,' the right question is whether the meters are more properly characterized as 'fixed' than as 'portable,' as 'stationary' than as mobile.'").  The doctrine of waiver, as applied to claim construction "preclude[s] a party from adopting a new claim construction position on appeal," not from defending the same position it took in *Markman* proceedings.  *Interactive Gift Express*, 256 F.3d at 1346; *see also Solvay*, 742 F.3d at 1003 ("A claim construction argument is considered 'new' if a party change[s] the scope of the claim construction rather than clarifying or defending the original scope of its claim construction' or 'supporting its existing claim construction position with new citations to the specification.").  Silver Spring has not asked for such a new construction or waived its right to challenge the error.

### B. Silver Spring Was Not Required to Make Futile Objections Throughout Trial to Preserve Its Original Claim Construction Position

EON's second attempt to avoid the merits of the parties' claim construction dispute is the rather remarkable argument that, having unsuccessfully argued for a construction of the terms "mobile" and "portable" at the *Markman* hearing, Silver Spring was required to make the same arguments again at trial by interrupting the proceedings with objections.

Silver Spring sought — and was denied — construction of "mobile" or

"portable." It did not need to preserve that position by repeatedly — and futilely — objecting to the district court's erroneous claim construction throughout trial. Under Federal Circuit precedent, a party is not "required to repeat its unsuccessful construction arguments to the district court . . . to preserve the issue for appeal." *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1355 (Fed. Cir. 2012); *see also O2 Micro*, 521 F.3d at 1358–59 (party did not waive right to challenge claim construction on appeal when it had advanced the argument during *Markman* proceedings but did not object to the court's jury instruction on that claim construction); *Lighting Ballast Control LLC v. Universal Lighting Techs., Inc.*, No. 2012-1014, Dkt. No. 310 at 11–13 (Fed. Cir. June 23, 2015). The Fifth Circuit takes the same approach. *Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 223 (5th Cir. 2000) ("[F]ailure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing."). EON's contention that Silver Spring cannot challenge the district court's claim construction because it did not repeatedly raise a losing argument in response to trial testimony or jury instructions, *see* Opposition Br. at 21, 24, flies in the face of settled precedent and common sense, and should be rejected.

### C.    Silver Spring Is Not Challenging the District Court's Evidentiary Rulings

EON argues that Silver Spring's appeal is based on "nothing more than the district court's allowance of the jury to hear testimony" from experts and counsel during trial.  Opposition Br. at 21, 38.  To the contrary, Silver Spring argues that the jury verdicts of infringement must be reversed because they are based on erroneous claim construction.

This is not a case in which Silver Spring objects to evidence or argument on the grounds that they misled the jury or were wrongly admitted into evidence. Silver Spring's objection is that none of these arguments belonged before the jury in the first instance because they are disputes over claim construction.  The trial testimony itself simply shows that the parties could — and did — take two different positions in arguing infringement because the district court's claim construction order left ambiguous the scope of claims requiring "mobile" or "portable" subscriber units.

### D.    Silver Spring Did Not Invite Error

EON argues in a footnote that Silver Spring waived its objections to testimony by EON's patent law expert, law professor Jay Kesan, by eliciting his testimony on cross-examination.  Opposition Br. at 23–24 n.10.  EON is wrong. The problem with Dr. Kesan's testimony is that it reflects a genuine dispute over the scope of the patent terms, and that dispute does not belong before the jury.

Silver Spring cited it only to show the absurdity of EON's construction, not to dispute its admission. In any event, because Dr. Kesan testified on direct examination to his interpretation as a legal scholar of the meaning of "mobile" and "portable," A634 at 46:1–47:17; Silver Spring was surely allowed to explore the limits (or the absence thereof) of EON's construction of the terms.

### E.     Silver Spring's Objection is Not to Attorney Argument

In its opening brief, Silver Spring pointed to EON's attorney's closing argument, which invited the jury to define the terms "mobile" and "portable" for itself. EON argues that Silver Spring has waived any objection to this argument by not objecting during the closing itself. Opposition Br. at 31 n.14. Wrong again. The argument is not itself the basis for legal error. It is instead evidence that the jury was asked to do precisely what this Court forbids — construe the claims.

### F.     Silver Spring Did Not Waive Its Arguments With Respect to the '491 Patent

As EON recognizes, Silver Spring has not pointed to conflicting trial testimony regarding the scope of the "transmitting" limitation in the '491 patent. Opposition Br. at 38–39. This is because the dispute about the meaning of "transmitting" did not arise until after trial. The claims are unambiguous. They require that "digital data messages" be both "transmit[ed]" and "receiv[ed]" by the accused base stations. EON did not ask for a definition of any of those terms, or indicate at any time before trial that it sought some special meaning of the relevant

language of the '491 patent.

EON created the claim construction dispute by arguing for the first time in its JMOL response after trial that "the '491:1 claim is broader than the '546:1 with respect to other elements."  A890.  The district court agreed with EON and denied Silver Spring's JMOL on the ground that (1) EON's expert "testified that claims 1 and 2 of the '491 patent do not require the transmission of data messages from the base station to the subscriber units," and (2) "the jury was entitled to accept Dr. Bims' reading of the claims."  A14.  Silver Spring's motion for reconsideration of JMOL was therefore its first opportunity to challenge the court's new determination that the jury had properly implicitly construed claims 1 and 2 of the '491 patent.

This Court has expressly held that "[w]hen issues of claim construction have not been properly raised in connection with the jury instructions, it is improper for the district court to adopt a new or more detailed claim construction in connection with the JMOL motion."  *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320–21 (Fed. Cir. 2003).  As here, "where the parties and the district court elect to provide the jury only with the claim language itself, and do not provide an interpretation of the language in the light of the specification and the prosecution history, it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new

and more detailed interpretation." *Id.* That is precisely what the district court did in ruling for EON.

Consequently, Silver Spring has not waived its right to argue that the base station recited in claims 1 and 2 of the '491 patent must be construed consistently with the plain and ordinary meaning of the claim language, relevant specification disclosures, and identical claim language in closely related patents whose construction EON does not dispute. If anything, waiver should have precluded ***EON*** from newly interpreting claim language during JMOL proceedings in a way that departs from its ordinary meaning, and precluded the district court from requiring that EON's claim interpretation be "so unreasonable" that the issue qualify as "one of law rather than fact." A14.

### G.    Silver Spring Does Not Ask This Panel to Find Claim Preambles Limiting, but Merely Preserves the Issue for En Banc Review

EON suggests that Silver Spring has waived its argument that the preambles here are limiting. Opposition Br. at 41–42. But Silver Spring does not ask this panel to overrule binding circuit precedent and hold the preambles limiting. Opening Br. at 40 n.9. Rather, its position is that, if *en banc* review is necessary, this Court should overrule its precedent and hold that words in a claim preamble have the same force as words in the rest of a claim. *Id.* Silver Spring similarly did not ask the district court to ignore this Court's precedent in treating the preambles as limitations on claim scope. Silver Spring has merely preserved this argument

for further review; its failure to ask the district court to ignore controlling precedent is not waiver.

### H. Silver Spring Did Not Waive Its New Trial Challenge

EON half-heartedly argues that Silver Spring waived its right to seek a new trial on damages because it did not object at trial to Mr. Lindsay's testimony. Opposition Br. at 48 n.20. EON is factually wrong; Silver Spring did in fact object to Mr. Lindsay's testimony and sought to have it excluded below. A1608–23; A1624–42. In any event, the question is not whether Mr. Lindsay was entitled to testify to a single damages amount for all three patents, but whether there is evidence that the *jury* necessarily found the '546 patent valueless. That issue arose only once the district court granted JMOL on the '546 patent, and could not have been challenged at trial. Silver Spring raised the issue in its JMOL and briefing. A859; A510–11 at 103:24–106:17; A657–58 at 139:7–144:1.

## CONCLUSION

The district court's refusal to grant judgment as a matter of law should be reversed. In the alternative, the Court should order a new trial on damages.

Dated: July 2, 2015                    Respectfully submitted,

                                       DURIE TANGRI LLP

                                       /s/ Mark A. Lemley
                              By:      _____
                                       MARK A. LEMLEY

                                       *Attorneys for Defendant-Appellant Silver Spring Networks, Inc.*

# United States Court of Appeals
## for the Federal Circuit

*EON Corp. IP Holdings LLC v. Silver Spring Networks, Inc.,* 2015-1237

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by DURIE TANGRI LLP, Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **July 2, 2015** counsel has authorized me to electronically file the foregoing **Reply Brief for Defendant-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

DANIEL R. SCARDINO
CATHERINE B. HARRIS
JOHN L. HENDRICKS
RAYMOND W. MORT, III
JOHN M. MURRELL
REED & SCARDINO LLP
301 Congress Avenue
Austin, TX 78701
(512) 474-2449
dscardino@reedscardino.com
bharris@reedscardino.com
jhendricks@reedscardino.com
mmurrell@reedscardino.com
rmort@reedscardino.com

Additionally, a copy will be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

July 2, 2015                                    /s/ Robyn Cocho
                                               Robyn Cocho
                                               Counsel Press

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e). The brief contains 6,999 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 point font.

DATED:  July 2, 2015                          DURIE TANGRI LLP


                              By   /s/ Mark A. Lemley
                                      MARK A. LEMLEY

                                  *Attorneys for Defendant-Appellant Silver Spring Networks, Inc.*